SRM

1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Edilberto Reyes,**<br>Petitioner<br>-vs-<br>**Dora B. Schriro, et al.,**<br>Respondent(s) | CV-05-1716-PHX-SRB (JI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

11

## I. MATTER UNDER CONSIDERATION

12

13

14

15

Petitioner, previously[1] incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 8, 2005 (#1).  On December 29, 2005 Respondents filed their Response (#26).   Petitioner has not filed a reply.

16

17

18

19

20

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

21

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

22

### A.  FACTUAL BACKGROUND

23

24

In affirming Petitioner's direct appeal, the Arizona Court of Appeals summarized the facts as follows:

25

26

> On April 8, 2000, Reyes attended a family party at the apartment of his niece Lucia, and her husband, Salvadore.  Salvadore's sister,

27

28

---

[1] Petitioner filed a Notice of Change of Address (#20) effective November 20, 2005, reflecting his release from prison.

Susana, also attended the party with her husband, Ulysses, and their three-year-old daughter. Near midnight, Susana and her daughter went to sleep in one of the bedrooms. Lucia retired to her bedroom shortly thereafter, leaving Reyes, Ulysses, Salvadore, and Reyes's cousin, Herman, still drinking beer and talking. At approximately 2:00 a.m., the men left the apartment.

Susana was in bed asleep with her daughter when she felt someone "jump[] on the bed" and start "running his tongue over [her] vagina." Thinking that it was her husband but nonetheless finding the act "unpleasant," she backed away, saying "Ulysses, I don't like it. I don't like it." When she couldn't stand it anymore," she opened her eyes and saw Reyes. Susana yelled, and Reyes "took off running." Lucia responded to Susana's screams, and Susana was crying as she told Lucia what had happened. Susana subsequently took a shower because she felt "disgust[ed]" and "felt dirty."

Ulysses and Salvadore called the police when they returned to the apartment. When the officers arrived, Susana still was "very hysterical," trembling and crying. After speaking with her, the officers arrested Reyes when he arrived at his house.

During a later police interview, Reyes initially denied returning to the apartment or having had any sexual contact with Susana. Eventually, however, he admitted that he had returned to the apartment and entered Susana's bedroom while she was asleep and performed oral sex with his tongue "on her vaginal area." He claimed that Susana had been "reacting and responding" to the act and had told him to close the door of the bedroom. She "screamed," in his opinion, upon realizing that it was Reyes and not her husband, and he had run from the residence. Reyes wrote and signed a statement confirming his interview statements.

(Answer, #26, Exhibit B, Memorandum Decision at 2-3.)

Petitioner was charged with one count of sexual assault and one count of burglary in the second degree. (Exhibit A.)

**B. PROCEEDINGS AT TRIAL**

During the pre-trial proceedings, the prosecution tendered two offers through defense counsel. The first offer was to a single class 3 felony, with a sentencing range of 2 to 8.75 years, and requiring sentencing to a term of imprisonment and sex offender registration. The second offer was similar, but included the possibility of probation. (Exhibit A, Memorandum Decision at 3.) Petitioner contends that he was not told prior to trial of either of these offers.

Petitioner proceeded to trial, attempted to argue that he and Susana were involved in a relationship, that the sexual conduct was consensual, and she objected only when she though her husband had come home  Petitioner was convicted as charged. Petitioner retained new

1   counsel to represent him at sentencing.  Petitioner was sentenced to a mitigated term of 5.25

2   years on the sexual assault charge, and a concurrent presumptive term of 3.5 years on the

3   burglary.   (*Id.*; Exhibit B, Memorandum Decision at 3-4; Exhibit C, Sentence of

4   Imprisonment.)

5          After sentencing, counsel moved to vacate the judgment on the ground that trial counsel

6   had been ineffective in communicating the offered plea agreements to Petitioner.   (Exhibit

7   D.) Petitioner's arguments were that either trial counsel failed to communicate the offers, or

8   at a minimum trial counsel failed to insure that Petitioner understood the offers.  (Exhibit A;

9   Memorandum Decision at 7.)  Trial counsel asserted that the offers had been communicated,

10  but conceded that it was "'very possible [Petitioner] did not understand' the plea offers and that

11  they should have been reduced to writing and 're-explained to him in Spanish.'" (*Id.*  at 6.)

12          The trial court denied the Motion to Vacate, finding that trial counsel
            effectively communicated the plea offers, that [Petitioner's] grasp of
13          English was quite good, that [Petitioner's] claim of innocence was
            consistent with his rejection of the plea offers, that [Petitioner] had
14          "cogent personal and business reasons" to decline the offers based on the
            sex offender registration requirement and the possibility of prison time,
15          and that failure to request a settlement conference was not ineffective
            assistance of counsel.
16
17  (*Id.* at 7.  *See also* Exhibit G, Minute Entry 1/16/01.)

18  **B. PROCEEDINGS ON APPEAL OF DENIAL OF MOTION TO VACATE**

19          Petitioner filed an appeal from the trial court's order denying his Motion to Vacate.

20  Appointed counsel filed a brief pursuant to *Anders v.  California*, 386 U.S. 738 (1967) and

21  related state authorities, certifying that despite a thorough review counsel had found no

22  appealable issues.  Counsel did, however, raise at Petitioner's request the allegation that trial

23  counsel had not advised Petitioner of the plea offers.  (Exhibit H, Opening Brief at 10.)    In

24  addition, Petitioner was granted leave to file a supplemental brief *in propria person*.  (Exhibit

25  A, Memorandum Decision at 2.)

26          Petitioner's Supplemental Brief (Exhibit I) raised a series of factual arguments in

27  support of Petitioner's claim that the plea offers were not communicated.  Petitioner raised

28

1  questions about credibility determinations, the lack of settlement conference, rationales for

2  rejecting a plea, ignorance of a right to a plea, method of communicating the plea offer, the

3  availability of trial counsel, fee disputes with trial counsel, and the racial mix on the jury.

4  (Exhibit A, Memorandum Decision at 9-11.)

5       The only federal authority cited to by appellate counsel was the *Anders* decision.

6  Petitioner did not cite any federal authorities or constitutional provisions or principles in his

7  Supplemental Brief.

8       In a Memorandum Decision issued January 10, 2002, the Arizona Court of Appeals

9  denied Petitioner's appeal on the Motion to Vacate Judgment.  (Exhibit A.)  In doing so, the

10  Arizona Court of Appeals left unmolested the trial court's acceptance of "trial counsel's

11  testimony that he conveyed both offers."  (*Id.*  at 9.)

12

13  **C.  PROCEEDINGS ON DIRECT APPEAL**

14       Subsequent to his appeal of the motion to vacate, Petitioner was granted leave to file

15  a delayed appeal of his judgment and sentence.  (Exhibit B, Memorandum Decision at 4, n.2;

16  Exhibit J, M.E. 2/7/02.)  Petitioner filed his Notice of Appeal (Exhibit K) on February 19,

17  2002, and eventually Petitioner filed his appeal brief through counsel, raising four issues:

18        (1) whether the trial court abused its discretion in permitting the
          prosecutor to impeach Reyes's wife by using an undisclosed felony
19        conviction of Reyes; (2) whether the trial court erred in giving the
          prosecutor's requested flight instruction; (3) whether the court erred in
20        giving a "without consent" instruction and (4) whether the court abused
          its discretion in denying Reyes' motion for clemency as untimely.

21  (Exhibit B, Memorandum Decision at 4.  *See also* Exhibit P, Opening Brief at i-ii.)

22       The only federal authorities cited to by Petitioner in his Opening Brief was in his

23  argument on the use of the prior conviction, which he argued "deprived Appellant of a fair trial

24  and due process.  United States Constitution, Amendments 5, 6 and 14."  (Exhibit P, Opening

25  Brief at 24.; *id.*  at *iii-iv* (Table of Citations).)

26       By a Memorandum Decision issued January 30, 2003 (Exhibit B), the Arizona Court

27  of Appeals denied the appeal and affirmed Petitioner's convictions and sentences.  Petitioner

28

did not seek further review, and the Order and Mandate was issued April 17, 2003.  (Exhibit B.)

**D.  PROCEEDINGS ON FIRST POST-CONVICTION RELIEF**

On March 22, 2002, during the pendency of his direct appeal, Petitioner filed a Notice of Post-Conviction Relief.  (Exhibit L.)  A week later, on March 29, 2002, he filed his *pro se* Petition for Post-Conviction Relief, raising a myriad of issues.  (Exhibit M.)  On June 10, 2002, counsel filed a Petition for Post-Conviction Relief, raising only the ineffective assistance claim based on failure to communicate the plea offers.  (Exhibit N.)  The trial court struck Petitioner's *pro se* Petition, on the basis that Petitioner was represented by counsel. The court then denied the petition, on the basis that the issue of communication of the plea had been finally adjudicated by the appeal from the motion to vacate.  (Exhibit O, Minute Order 7/23/02.)  Petitioner did not appeal that decision.

**E.  PROCEEDINGS ON SECOND POST-CONVICTION RELIEF**

On October 18, 2002, again during the pendency of his direct appeal, Petitioner filed a second Notice of Post Conviction Relief.  (Exhibit Q.)  Petitioner argued that his appellate and post-conviction counsel were ineffective.    On November 7, 2002, the trial court dismissed this petition as untimely.  (Exhibit R, Minute Entry 11/7/02.)   Petitioner did not appeal that decision.

**F.  PROCEEDINGS ON THIRD POST-CONVICTION RELIEF**

On May 13, 2003, after the issuance of the Mandate on his direct appeal, Petitioner filed his third and final[2] Notice of Post-Conviction Relief and Petition.  The trial court summarily dismissed this Notice and Petition on the basis that Petitioner was precluded

---

[2]  Petitioner argues in his Petition that the issues presented to the Arizona appellate courts were those "from his Fourth [sic] July 13, 2004 Rule 32 Notice and Petition."  (Petition, #1 at 6.)  However, there is nothing in the record to reflect the existence of such a petition.

1   pursuant to Arizona Rule of Criminal Procedure 32.2(a) from asserting claims that were or

2   should have been raised on direct appeal or in his first post-conviction proceeding.  (Exhibit

3   S, M.E. 5/30/03.)

4

5   **G.  APPEAL ON POST-CONVICTION RELIEF PROCEEDINGS**

6          On July 23, 2003, Petitioner filed a Petition for Review of the dismissal of his petition

7   for post-conviction relief.  (Exhibit T.)  Petitioner alleges in his Petition and Respondents

8   argue in their Answer that this was an appeal from the denial of Petitioner's first post-

9   conviction relief notice.  (Petition, #1 at 2; Answer, #26 at 4.)  However, in the Petition for

10  Review, Petitioner makes clear that this appeal relates to the Third Petition.[3]

> Appellant [then] filed a Third Post-Conviction Relief Claim (*see* Post-Conviction relief, filed May 7, 2003, in No.  CR-2000-00-6270, and dismissed under Court Docket Codes 167 and 023), where now Appellant Reyes is appealing to this Court from the Arizona Superior Court of Maricopa County dismissing his Third Rule 32 Post-Conviction Relief.

(Exhibit T, Petition for Review at 2.)[4]

       The Arizona Court of Appeals summarily denied the petition for review on July 13,

2004.  (Exhibit U.)  Petitioner then sought review by the Arizona Supreme Court, who also

summarily denied review on February 14, 2005.  (Exhibit W.)


**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

       Petitioner commenced the present Federal proceedings by filing his Petition for Writ

of Habeas Corpus (#1) on June 8, 2005.  Petitioner's Petition alleges the denial of various

---

[3]  Apart from the representations in the Petition for Review, it appears that the only decision still appealable at the time the petition for review was filed was the denial of the Third PCR Petition.  *See* Arizona Rule of Criminal Procedure 32.9(c) (petition due within 30 days of denial of PCR petition).

[4]  Recognizing that this appeal related to Petitioner's third PCR petition requires a determination that Petitioner's statutory one year to file his federal petition was running from March 1, 2003 (conviction final) until May 13, 2003 (3rd PCR petition filed), and again from February 14, 2005 (PCR appeal denied) until June 8, 2005 (federal petition filed).  (Proceedings on the first and second PCR petitions were concluded before the conviction became final.)  In contrast, Respondents conclude that Petitioner's one year did not commence running until the denial of the PCR appeal, and thus was wholly unused at that time.  (Answer, #26 at 4-5.)  The difference does not, however, yield Petitioner's petition untimely.  As of June 8, 2005, he had used only 187 days of his one year.

constitutional rights from: (1) trial counsel's failure to communicate the plea offers (#1 at 5);
(2) the inexperience of the trial judge and the suppression of exculpatory evidence (*id.* at 6);
(3) a conspiracy between the judge, the prosecutor and defense counsel to prevent Petitioner
from confronting the victim prior to trial (*id.* at 7); (4) a conspiracy to not maintain records
of the communication of the plea agreement (*id.* at 8).

Respondents filed their Answer (#26) on December 29, 2005, arguing *inter alia* that:
(1) the Petition is timely (#26 at 4-5), (2) Petitioner has failed to properly exhaust and has
procedurally defaulted his state remedies on all claims other than the claim that trial counsel
failed to communicate the plea offer (*id.* at 5-9); and (3) Petitioner cannot overcome the
presumptions of correctness under the AEDPA applicable to the state court's rejection of
Petitioner's ineffectiveness claim (*id.* at 9-11).

Despite being advised of his opportunity to do so by the Court's service Order (#6 at
3), Petitioner has not filed a reply in support of his Petition.

### III. APPLICATION OF LAW TO FACTS

**A.  PROCEDURAL DEFAULT**

Respondents argue that Petitioner has failed to exhaust his state remedies on his claims
other than the assertion that trial counsel failed to communicate the plea offers, because he
never fairly presented the claims to the state appellate courts.   Thus, Grounds II, III and IV
must be dismissed with prejudice.

**Exhaustion Required** - Generally, a federal court has authority to review a federal
constitutional claim presented by a state prisoner only if available state remedies have been
exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)(per curiam). The exhaustion doctrine,
first developed in case law has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking
habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.
*Cartwright v. Cupp,* 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S.
1023 (1982).

Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

1   raise the claim in a direct appeal or collaterally attack his conviction in a petition for

2   post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir.

3   1994). Only one of these avenues of relief must be exhausted before bringing a habeas

4   petition in federal court. This is true even where alternative avenues of reviewing

5   constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211

6   (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

7   1059 (1989). "In cases not carrying a life sentence or the death penalty, 'claims of Arizona

8   state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals

9   has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting

10  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999)).

11      **Fair Presentment** - Moreover, to result in exhaustion, claims must be "fairly

12  presented." That is, the petitioner must provide the state courts with a "fair opportunity" to

13  apply controlling legal principles to the facts bearing upon his constitutional claim. 28 U.S.C.

14  § 2254; *Picard v. Connor*, 404 U.S. 270, 276-277 (1971). A claim has been fairly presented

15  to the state's highest court if petitioner has described both the operative facts and the federal

16  legal theory on which the claim is based. *Kelly v. Small,* 315 F.3d 1063, 1066 (9th Cir. 2003).

17      Moreover, the federal issue must be raised directly, and not by inference or imputation.

18  The Arizona habeas petitioner "must have presented his federal, constitutional issue before the

19  Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v.

20  McFadden*, 399 F.3d 993, 999 (9th Cir. 2005). It is not "enough to raise a state claim that is

21  analogous or closely similar to a federal claim." *Castillo v. McFadden,* 399 F.3d 993, 999 (9th

22  Cir. 2005).

23      **Petitioner's Exhausted Claims** - Here, the only issue fairly presented by Petitioner

24  to the Arizona Court of Appeals were those in his appeal from the Motion to Vacate

25  Judgement, and his direct appeal. In neither of these proceedings did Petitioner argue his

26  claims in Grounds II, III and IV.

27      However, Petitioner did argue in his appeal on the motion to vacate that trial counsel

28  failed to communicate the plea offer. Petitioner made no explicit argument that this was a

denial of his federal constitutional right to effective assistance of counsel.  Appellate counsel, in her *Anders* brief simply asserted the factual claim.  (Exhibit H, Opening Brief at 10.) Petitioner made no references to any legal theories in his Supplemental Brief.  (Exhibit I.) However, the Arizona Court of Appeals made clear it's understanding that this claim was an assertion of a federal right to effective assistance, citing "*See State v.  Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985) (court need not address second prong of *Strickland* test if defendant makes insufficient showing on the first prong)."  (Exhibit A, Memorandum Decision at 9.)  The Arizona court was thus referencing state decisions based upon *Strickland v. Washington*, 466 U.S. 668 (1985), the seminal federal case on ineffective assistance of counsel.

While ordinarily the Petitioner must have plainly raised the federal claim in his state court filings, a state court's actual consideration of a claim satisfies exhaustion. *See Sandstrom v. Butterworth,* 738 F.2d 1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue"); *see also Walton v. Caspari*, 916 F.2d 1352, 1356-57 (8th Cir.1990) (state court's *sua sponte* consideration of an issue satisfies exhaustion).

Thus, only Petitioner's claim based upon ineffective assistance from non-communication of the plea offers was properly exhausted.

**Independent and Adequate State Grounds** - Petitioner argues that he presented all of his claims in his Petition for Review to the Arizona Court of Appeals and Arizona Supreme Court, which sought review of Petitioner's third PCR petition.  However, federal habeas review of a federal claim is precluded when the state court has disposed of the claim on a procedural ground "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989); *Bennett v. Mueller,* 322 F.3d 573, 580 (9th Cir. 2003) (citing *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).  *But see, Stewart v. Smith,* 536 U.S. 856, 860 (2002) ("assum[ing]" independence standard applies on habeas).

Here, the Arizona Court of Appeals and Arizona Supreme Court each issued summary

denials of the petition.  (Exhibits V and W.)    To determine whether a state procedural ruling bars federal review, the habeas court must look to the "last reasoned opinion on the claim." *Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991).    Thus, a summary denial following a reasoned decision is presumed to be based on the same grounds as the reasoned decision, and the habeas court should "look through" the summary denial to the rationale given in the reasoned decision. *Id.*   Thus, this Court must look to the decision of the trial court, which dismissed the claims as precluded under Ariz.R.Crim.P. 32.2.

Petitioner makes no argument that this procedural bar is not an independent and adequate state ground for denying his state petition.  Accordingly, even if it is assumed that Petitioner had included the claims in Grounds II, III and IV in those appeals, this Court would be precluded from considering them.

**Procedural Default** - Alternatively, Respondents argue that Plaintiff has not merely failed to exhaust, but has procedurally defaulted his un-presented claims. As an alternative to presenting his claims to the highest state court, a petitioner can satisfy the exhaustion requirement by demonstrating that no state remedies remained available at the time the federal habeas petition was filed.  *Engle v. Isaac*, 456 U.S. 107, 125 (n. 28)(1982); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).  If, however, the procedural bar is of the petitioner's own making, then he may be precluded from seeking habeas relief.

> If state remedies are not available because the petitioner failed to comply with state procedures and thereby prevented the highest state court from reaching the merits of his claim, then a federal court may refuse to reach the merits of that claim as a matter of comity.

*Buffalo v. Sunn*, 854 F.2d 1158, 1163 (9th Cir. 1988).  This failure to comply with reasonable state procedures is usually characterized as "procedural default."  Where an unexhausted claim would clearly be barred as a result of a procedural default, dismissal without prejudice is not necessary, and the claim may be dismissed with prejudice as procedurally defaulted.  *Johnson v. Lewis*, 929 F.2d 460 (9th Cir. 1991).  Thus, to the extent that Petitioner's claims were not procedurally barred in his appeal on his third PCR petition, they are now procedurally defaulted and barred from consideration.

Plaintiff can no longer seek direct review.  Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.  Moreover, the Arizona Rules of Criminal Procedure do not provide for a successive direct appeal.  *See generally* Ariz.R.Crim.P. 31.

Similarly, Plaintiff can no longer seek review by petition for post-conviction relief. Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."   *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).

While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him.   Accordingly, it appears that Petitioner's unexhausted claims are procedurally defaulted. Dismissal with prejudice of a procedurally barred or procedurally defaulted habeas claim is generally proper absent "cause and prejudice" to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984); *Tacho v. Martinez,* 862 F.2d 1376, 1380 (9th Cir. 1988).

**Cause and Prejudice** - If the habeas petitioner has procedurally defaulted on a claim, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Although both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac,* 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).

Petitioner has not filed a reply, and has asserted no basis for his failure to exhaust. Accordingly, the undersigned find no basis for a finding of cause to excuse Petitioner's procedural default.

**Actual Innocence** - The standard for "cause and prejudice" is one of discretion intended

to be flexible and yielding to exceptional circumstances.   *Hughes v. Idaho State Board of Corrections,* 800 F.2d 905, 909 (9th Cir. 1986).  Failure to establish cause may be excused under exceptional circumstances, for instance "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Again, Petitioner makes no argument that his procedural defaults should be excused on the basis of actual innocence.

**Dismissal With Prejudice** - Petitioner's Grounds II, III and IV were either presented in his third PCR proceedings, and now procedurally barred, or were not presented and are now procedurally defaulted.  Accordingly, these grounds for relief must be dismissed with prejudice. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

## B.   FAILURE TO COMMUNICATE PLEA OFFERS

For his Ground I for relief, Petitioner argues that he received ineffective assistance of counsel when trial counsel failed to communicate plea offers extended by the prosecution. (Petition, #1 at 5.)  Petitioner's hope for success on this claim is dependent upon this Court's conclusion that the offers were not communicated.  However, the findings of the state courts that the offers were communicated may only be overruled if the findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Here, there was substantial evidence to support the State court's finding that the offers were communicated, namely the testimony of trial counsel that he had communicated both offers.  (Exhibit E.  R.T. 1/8/01 at 52-54 (communication of first plea offer); *id.*  at 55 (communication of second plea offer).) The only controverting evidence was: (1)  the testimony of Petitioner that the offers were not communicated  (*id.* at 11); (2) the testimony of Petitioner's Spanish speaking sister that during her meetings with Petitioner and trial

counsel there was no discussion of possible plea agreements, despite the fact that the discussions with counsel were in English  (Exhibit F, R.T. 1/12/01 at 6-11); and (3) the testimony of Petitioner's wife that during her meetings with Petitioner and trial counsel there was no discussion of possible plea agreements (*id.* at 15-17).  The state court could reasonably discount the credibility of the Petitioner and his relatives, and accept the testimony of trial counsel.  This is particularly true in light of the circumstantial facts noted by the Arizona Court of Appeals "that [Petitioner's] claim of innocence was consistent with his rejection of the plea offers, that [Petitioner] had 'cogent personal and business reasons' to decline the offers based on the sex offender registration requirement and the possibility of prison time."  (Exhibit A, Memorandum Decision at 7.  *See also* Exhibit G, Minute Entry 1/16/01.)

Because Petitioner fails to show that the state court's finding was unreasonable, the finding is "dressed in a presumption of correctness" under 28 U.S.C. § 2254(e)(1), which permits a challenge based upon extrinsic evidence only if such extrinsic evidence is "clear and convincing evidence."  *Taylor,* 366 F.3d at 1000.  Petitioner presents no extrinsic evidence to overcome the presumption.

Therefore, this Court must accept the state court's findings that trial counsel did not fail to communicate the plea offer, and therefore cannot grant habeas relief upon allegations of such a failure.  Accordingly, Ground I is without merit and must be denied.


**C.  SUMMARY**

Ground I of the Petition, based upon trial counsel's failure to communicate the plea offers, fails to overcome the applicable presumptions of correctness, and is therefore without merit and must be denied.  The remaining grounds for relief, II, III and IV, are either unexhausted and procedurally defaulted, or were denied upon independent and adequate state grounds, and must be dismissed with prejudice.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds II, III, and IV of the Petitioner's

Petition for Writ of Habeas Corpus, filed June 8, 2005 (#1) be **DISMISSED WITH PREJUDICE**.

    **IT IS FURTHER RECOMMENDED** that Ground I of the Petitioner's Petition for Writ of Habeas Corpus, filed June 8, 2005 (#1) be **DENIED**.

## V. EFFECT OF RECOMMENDATION

    This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

    However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 proceedings. Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: April 28, 2006

_____
JAY R. IRWIN
United States Magistrate Judge

- 14 -